UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>YONGLIANG DENG<br>A/K/A DAVID DENG | No. 1:24-cr-00140-JAW-02 |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorneys, Andrew B. Benson, United States Attorney for the District of Maine, and Alisa Ross, Assistant United States Attorney, hereby submits this sentencing memorandum to address the following issues:

1. Whether the Defendant's offense level should be increased based on loss pursuant to U.S.S.G. § 2B1.1(b); and
2. Whether the Defendant should receive a "mitigating role" reduction to his offense level under U.S.S.G. § 3B1.2(a)-(b).

The Government respectfully addresses both issues in turn below.

## <u>Procedural History</u>

On January 21, 2026, the Defendant Yongliang "David" Deng pleaded guilty to conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349. (Dkt. # 83.) A revised presentence report ("PSR") was issued on May 14, 2026. (Dkt. # 104.) On June 11, 2026, the Court held a presentence conference with counsel. (Dkt. # 111.) Following that presentence conference, and in consultation with the parties, the Court set July 16, 2026, as the deadline for filing sentencing memos, which was later extended at the Government's request to July 27, 2026. (Dkt. # 111, 114, 115.)

## **Legal Argument**

A. The Defendant's offense level based on actual or intended loss.

"In fraud cases, the amount of loss – actual or intended – is an important integer in the calculation of a defendant's base offense level." *United States v. Carrasquillo-Vilches*, 33 F.4th 36, 42 (1st Cir. 2022); *see also United States v. Alphas*, 785 F.3d 775, 782 (1st Cir. 2015) (reasoning that "the guidelines use amount of loss as the primary metric by which 'the seriousness of the offense and the defendant's relative culpability' are measured") (quoting U.S.S.G. § 2B1.1(b)(1), cmt. backg'd).

Pursuant to U.S.S.G. § 2B1.1(b), an offender's offense level is increased by the amount of loss involved. Loss is defined as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1(b)(1), Notes to Table (A). As relevant here, intended loss means "the pecuniary harm that the defendant purposely sought to inflict," and "includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.* at Note (C)(ii). Loss is reduced as follows:

> (ii) In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing.
>
> (iii) Notwithstanding clause (ii), in the case of a fraud involving a mortgage loan, if the collateral has not been disposed of by the time of sentencing, use the fair market value of the collateral as of the date on which the guilt of the defendant has been established, whether by guilty plea, trial, or plea of *nolo contendere*.
>
> In such a case, there shall be a rebuttable presumption that the most recent tax assessment value of the collateral is a reasonable estimate of the fair market value. In determining whether the most recent tax assessment value is a reasonable estimate of the fair market value, the court may consider, among other factors, the recency of the tax assessment and the

> extent to which the jurisdiction's tax assessment practices reflect factors not relevant to fair market value.

U.S.S.G. § 2B1.1, Appl. Note 3(D)(ii), (iii).

"Depending on the facts, intended loss could range from zero--*e.g.,* if the defendant sincerely intended and reasonably expected fully to repay the loan --to the entire value of the loan--*e.g.,* if the defendant attempted to conceal the collateral." *United States v. McCoy*, 508 F.3d 74, 79 (1st Cir. 2007) (citations omitted) (holding that the intended loss was the "value of the loans less the expected value of the properties" where the defendant obtained loans for "individuals with low income and poor credit" because "he could—and should—have expected that the banks would probably recover only the value of the mortgaged properties").

Sentencing courts may "calculate loss by using the total amount billed as a 'starting point.'" *United States v. Yoon*, 167 F.4th 556, 565 (2026) (quoting *Alphas*, 785 F.3d at 784). Under the *Alphas* framework, a sentencing court looks at "the face amount of a bill" as "presumptive evidence of the amount that the person who submits it expects to obtain." *Yoon*, 167 F.4th at 565 (citation and quotation marks omitted). Next, a defendant may "rebut this presumption by proffering evidence establishing that he intended to reap some lesser amount." *Id.* A sentencing court "need only make a 'reasonable estimate of the loss,' keeping in mind" that the Government bears the burden of proving a sentencing enhancement like intended loss. *Id.* (citations omitted).

Here, the Government submits that the intended loss analysis starts with the $171,200 figure – the amount of the fraudulently obtained residential mortgage – and that it should be reduced by the fair market value of the property. The record evidence

shows that the Defendant conspired with coconspirator Yuantong "Tony" Liang to execute a scheme to defraud Kennebec Savings Bank ("KSB"). (PSR at ¶¶ 8-11) Specifically, the Defendant obtained a residential mortgage of $171,200 from KSB based on false representations and promises that he was the actual applicant and borrower who intended to occupy the Eddington property as his primary residence. (*Id.*) KSB relied on these false promises in granting the mortgage, and the Defendant received a lower and more favorable interest rate that was fixed rather than adjustable. (*Id.* ¶ 12.) These funds were used to purchase the Eddington property in about January 2021, and the property was instead used as an illegal marijuana grow house. (*Id.* ¶¶ 11-12.) The Defendant admitted that he never resided at the Eddington property and that the property was an investment property that was rented out. (Dkt. # 82 - Prosecution Version of the Offense; *See also* PSR ¶ 10A.)

By a preponderance of the evidence, this evidence shows that the Defendant intended to obtain $171,200 from KSB by fraud. This is the monetary harm that the Defendant intended or sought to inflict when he conspired to commit bank fraud. *See* U.S.S.G. § 2B1.1(b)(1), Notes to Table (C)(ii). The mortgage was obtained based on false promises that he intended it to be his primary residence. If the Defendant had disclosed that he was not the actual borrower or that it was an investment property, it was reasonably foreseeable that he would not have obtained this mortgage from KSB. For these reasons, the Government submits that the intended loss is $171,200.

This amount, however, must be reduced by "the fair market value of the collateral as of the date on which the guilt of the defendant has been established, . . . ." U.S.S.G. § 2B1.1, Appl. Note 3(D)(iii). The Defendant pleaded guilty on January 21, 2026. (Dkt. #

83.) The most recent tax assessment is from 2025 and shows that the Eddington property is worth $306,800. (PSR at ¶ 13.) There is a rebuttable presumption that this most recent tax assessment is a reasonable estimate of the fair market value of the property. U.S.S.G. § 2B1.1, Appl. Note 3(D)(iii). Because the tax assessment ($306,800) is greater than the loss ($171,200), there is no loss unless the Government can rebut the presumption that the tax assessment is a reasonable estimate of the fair market value of the Eddington property.

The Government does not have sufficient evidence that it can offer to rebut that presumption. Although the evidence shows that the Eddington property was used as an illegal marijuana grow house, and that it may not be marketable or valued at $306,800, the Government has insufficient proof to show that the 2025 tax assessment is not a reasonable estimate of the fair market value of the property. Accordingly, the Government does not intend to press the ten-level enhancement in paragraph 21. With these adjustments, the Defendant's guidelines range is 0-6 months of imprisonment with a total offense level of three (3) and no criminal history points.

Notwithstanding that assessment, the Government asks the Court to impose restitution in this matter. Specifically, the Government requests that the Court impose restitution in the amount of the principal balance remaining on the mortgage at the time of sentencing.[1] *See United States v. Stone*, 866 F.3d 219, 227 (4th Cir. 2017) ("The evidence offered by the Government clearly supports the mortgages balances as the value of those mortgages and thus the loss amount for purposes of restitution.").

[1] The Government has requested an updated balance from the victim and will share that information with counsel for the Defendant and the U.S. probation office prior to sentencing.

*See also United States v. Foley*, 783 F.3d 7, 27 (1st Cir. 2015) (vacating and remanding an order of restitution on the ground that the district court "erred in failing to offset the original loan amounts by principal repayments made by some of the borrowers").

B. The Defendant was an average participant in the offense.

A sentencing court may decrease an offender's base offense level by two levels "if he 'was a minor participant in any criminal activity' for which he is being held accountable." *United States v. Arias-Mercedes*, 901 F.3d 1, 5 (1st Cir. 2018) (citing U.S.S.G. § 3B1.2(b)). A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.5).

"A defendant who seeks a mitigating role adjustment bears the burden of proving, by a preponderance of the evidence, that he is entitled to the downward adjustment." *Arias-Mercedes*, 901 F.3d at 5 (quoting *United States v. Perez*, 819 F.3d 541, 545 (1st Cir. 2016)) (internal quotations omitted). A defendant must show "that he was substantially less culpable than the average participant in the criminal endeavor." *Id*. at 6 (citing *United States v. De la Cruz-Gutierrez*, 811 F.3d 221, 225-26 (1st Cir. 2018)). That is, "in deciding whether to grant a minor participant reduction . . . the sentencing court should limit its inquiry to whether a given defendant is 'substantially less culpable than the average participant in the criminal activity' in which he was involved." *Id*. at 5-6 (quoting U.S.S.G. § 3B1.2, comment. (n.3(A))). This determination is "notoriously fact-specific." *Id*. at 5 (quoting *United States v. Cortez-Vergara*, 873 F.3d 390, 393 (1st Cir. 2017)) (internal quotations omitted).

In making this determination, a sentencing court must apply a four-part analysis.

First, the Court "must identify the universe of participants involved in the relevant criminal activity." *United States v. Guía-Sendeme*, 134 F.4th 611, 617 (1st Cir. 2025). Second, the Court "must order each participant along a continuum based on the degree of culpability in the criminal activity." *Id.* Third, the Court must "identify the average participant across all likely participants in the criminal scheme." Fourth, the Court must "compare the defendant's role in the criminal activity to the average participant's role." *Id.*

Further, a mitigating role analysis is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2, cmt. n.3(C). A court looks at the following non-exhaustive factors in measuring an offender's culpability against that of the average participant:

> i. The degree to which the defendant understood the scope and structure of the criminal activity;
>
> ii. The degree to which the defendant participated in planning or organizing the criminal activity;
>
> iii. The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> iv. The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> v. The degree to which the defendant stood to benefit from the criminal activity.

*Guía-Sendeme*, 134 F.4th at 618 (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)).

In this matter, the Government submits that the evidence shows that the Defendant was an average participant in the criminal activity. (Dkt. # 82 - Prosecution

Version; PSR ¶¶ 8-12.)

First, in terms of the "universe of participants" involved in the criminal activity, the PSR identifies Siu Shing Wong, Chao Zhang, and Yuantong "Tony" Liang as others involved with related criminal cases.[2] (PSR pg. 1.) Additional participants include individuals who rented and tended the properties being used as marijuana grow houses; individuals involved in the sale of these properties if they had requisite knowledge of the fraud or illegal activity; and individuals who installed commercial marijuana-growing equipment on the property, such as electricians and plumbers. (*See* PSR – Response to Objection No. 2 at pg. 21.)

Second, in terms of the continuum of culpability, the Government agrees with the following order in the PSR, from least to most culpable: any electrician/plumbers, any renters, Zhang, Wong, Deng and Liang. (*Id.*)

Third, the evidence shows that Deng and Wong were average participants in the scheme. Zhang, Wong, and Deng all provided Liang with their respective personal information to obtain mortgages and purchase properties in Maine that were then used to grow marijuana illegally. Wong and Deng also separately deposited checks into bank accounts, the funds from which were used to pay in part for the respective properties. Further, neither Wong nor Deng were forthcoming with investigators about their involvement with Liang. During his interview, Deng admitted that he came to Maine after purchasing the property; that he rented the Eddington property for $2,500 a

[2] Siu Shing Wong was convicted of conspiracy to commit bank fraud for his role in the conspiracy; specifically, agreeing with coconspirator Tony Liang to apply for and obtain a residential mortgage based on fraudulent pretenses. (U.S. v. Wong, 1:24-cr-00-145-SDN.) Chao Zhang was convicted of conspiracy to commit bank fraud for his role the conspiracy. (U.S. v. Zhang, 1:24-cr-00146-SDN.)

month; and that he had a feeling that his renter was doing something "illegal" in the home. (PSR ¶ 10A.) The Government submits that Deng's conduct shows that he is an average participant in the scheme. Thus, his conduct is not "substantially less culpable than the average participant in the criminal endeavor." *Arias-Mercedes*, 901 F.3d at 6 (citing *United States v. De la Cruz-Gutierrez*, 811 F.3d 221, 225-26 (1st Cir. 2018)).

While the Government contends that the Defendant is not a minor participant in the criminal activity, if the Court were to agree with the Government's assessment on loss and alter the Defendant's offense level, the Government notes that the Defendant's guidelines range would not change even with a two-level reduction for a mitigating role.

**Conclusion**

For the above reasons, the Government asks the Court to find that the Defendant was an average participant in the criminal activity and to order restitution as described above. The Government reserves its discussion of the applicable 18 U.S.C. § 3553(a) factors for the sentencing hearing.

Date: July 27, 2026

Respectfully submitted,

ANDREW B. BENSON
United States Attorney

BY: ***/s/ Alisa Ross***
Alisa Ross
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street, Room 111
Bangor, ME 04401
(207) 945-0373
Alisa.Ross@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2026, I filed the Government's Sentencing Memorandum with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

James Nixon, Esq.,
Counsel for Yongliang Deng

ANDREW B. BENSON
United States Attorney

BY: ***/s/ Alisa Ross***
Alisa Ross
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street, Room 111
Bangor, ME 04401
(207) 945-0373
Alisa.Ross@usdoj.gov