**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No.: 24-CR-140-JAW |
| | : | |
| v. | : | |
| | : | |
| YONGLIANG DENG a/k/a | : | |
| DAVID DENG | : | |

**DEFENDANT'S REPLY MEMORANDUM IN AID OF SENTENCING**

**NOW COMES** Defendant, Yongliang Deng, a/k/a David Deng (hereinafter "Mr. Deng"), by and through undersigned counsel, and hereby provides the Court with the following reply memorandum in aid of sentencing.

## *I. Argument*

### A. Mr. Deng Should not Receive a Sentencing Enhancement for Actual or Intended Loss.

Insofar as the government concedes: "the Government has insufficient proof to show that the 2025 tax assessment is not a reasonable estimate of the fair market value of the property .... [and that] ... [a]ccordingly, the Government does not intend to press the ten-level enhancement in paragraph 21", Mr. Deng respectfully submits that no reply is necessary.

### B. Mr. Deng Should Receive a "Minor Role" Reduction.

With respect to the question of whether Mr. Deng should be afforded a minor role reduction, Mr. Deng incorporates herein the points made in his original reply memorandum.

Additionally, at pp. 3 and 4 of the government's sentencing memorandum (ECF at #118), it only identifies that "the Defendant conspired with coconspirator Yuantong 'Tony' Liang to execute a scheme."[1] However, when assessing Mr. Deng's role, it implies that the "scheme" involved more people. *See Id.*, p.8 (stating "the evidence shows that Deng and Wong were average participants in the scheme" and going on to describe Zhang and Wong's roles as well). Insofar as the government's descriptions of the individuals involved in the "scheme" are inconsistent, Mr. Deng respectfully submits that limiting the universe of participants to only he and Mr. Liang (as argued in his original memorandum) is the more appropriate approach and that, after applying that approach, Mr. Deng should receive a "minor role" adjustment when considered in juxtaposition to Mr. Liang's conduct.

C. Restitution.

*1. Stone and Foley do not support the Government's request to impose restitution in the amount of the principal balance remaining on the mortgage at the time of Mr. Deng's sentencing.*

The Government cites *United States v. Stone*, 866 F.3d 219 (4th Cir. 2017) as support for its request that the Court impose restitution in the amount of the principal balance remaining on the mortgage at the time of Mr. Deng's sentencing. Specifically, the Government quoted from *Stone*: "[t]he evidence offered by the

---

[1] It bears noting that in Mr. Liang's PSR his co-conpirators (to include Mr. Deng) were apparently described as "mere 'nominal' owners of the properties in question" and that the Prosecution Version in that matter describes them only as "nominees of the Defendant". *See* July 30, 2026 "*United States v. Yuantong Liang, a/k/a Tony Liang*, 24-CR-140-JAW, at #119, n.1 & #81, p.2, respectively.

Government clearly supports the mortgages balances as the value of those mortgages and thus the loss amount for purposes of restitution." 866 F.3d at 227. However, put in context, the court was not stating there that the mortgage value itself was the proper restitution value, but rather addressing the proper mortgage value to use as part of the restitution equation.

The wider context of *Stone* makes this distinction evident. The defendant in *Stone* acted as a real estate agent to negotiate "short sales" with mortgage holders on behalf of homeowners. *Id.* at 222. The defendant would negotiate these short sales under fraudulent pretenses (i.e. misrepresenting that the relevant homeowners were nearing foreclosure) to induce the mortgage holders to accept the short sales prices, which were less than the balance owed on the mortgage, as satisfaction of the mortgage. *Id.* at 222, 226. She would then pay the negotiated short sale price and transfer ownership to herself, before quickly flipping the properties for higher short sale prices than she had paid the mortgage holders. *Id.*

The court in *Stone*, relying on the PSR, calculated the mortgage lenders' losses, and thus restitution, by calculating "the difference between the balances on the mortgages and the amounts [the defendant] paid [the lenders] from the short sales." *Id.* at 223-24. In her appeal, the defendant argued that that the court "should have calculated restitution by subtracting the amounts [she] paid the mortgage holders from the proceeds [she] actually received from the undisclosed 'flip' sales instead of from the balances owed on the mortgages." *Id.* at 226.

However, because there was no evidence the defendant attempted to solicit the highest price possible in resale, the court held that the "flip" sale price was not a reliable indicator of the market value for the houses. *Id.* at 226-27. Thus, it was in the context of analyzing "whether the district court correctly determined that the values of the mortgages on the dates of the fraudulent acts were the remaining balances on those mortgages" that the court stated that the mortgage balances should be used as the *starting point* when calculating the loss amount for purposes of restitution. *Id.* at 226-27.

It follows that *Stone* does not support the Government's request to base restitution in Mr. Deng's case on the balance owed on the mortgage but rather supports the contention that restitution may only be based on actual losses to the victim. Specifically, the victim lenders in *Stone* suffered clear, actual losses after being fraudulently induced to accept short sale prices below the relevant mortgage balances. As explained in Mr. Deng's original sentencing memorandum, Mr. Deng has not, to counsel's knowledge at this time, caused any actual loss to Kennebec Savings Bank. ECF at # 117.

The second case the Government cites, *United States v. Foley*, 783 F.3d 7 (1st Cir. 2015), similarly supports the defense's position that no restitution is due in Mr. Deng's case. As the Government quoted, the district court in that case "erred in failing to offset the original loan amounts by principal repayments made by some of the borrowers." *Foley*, 783 F.3d at 27. That error was a mere calculation error

acknowledged by both parties and does not substantially add to the analysis of how to properly calculate restitution. *Id.*

Rather, the important aspect of *Foley* is that restitution was calculated "by subtracting from each mortgage loan the amount recouped via foreclosure sales or, for properties that had not been resold, the [property assessment values at the time of sentencing]." *Id.* at 27. Akin to Mr. Deng's position articulated in his original sentencing memorandum, the *Foley* court read *Robers v. United States* to support the idea that courts should use their authority to avoid a windfall payment to a lender. *Id.* at 28 (citing *Robers v. United States*, 572 U.S. 639,644 (2014)).

Indeed, the *Foley* court went further, emphasizing that dicta in *Robers* suggests that courts have "adequate authority to count, as part of the restitution paid, the value of collateral previously received but not sold." *Id.* (*Robers*, 572 U.S. at 645 (Sotomayor, J., concurring, joined by Ginsburg, J.)). Following that logic, Mr. Deng would owe no restitution because the value of the Eddington property, which surpasses the remaining value on the mortgage loan, would count towards restitution paid.

*2. Restitution is Not Proper in this Case Because the Victim Bank Suffered no Actual Loss.*

It is critical that "[a] court may base its restitution order on actual losses only." *Stone*, 866 F.3d at 226. This is because "the purpose of restitution is not to punish the defendant, but to make the victim whole again by restoring to it the value of the losses it suffered as a result of the defendant's crime." *United States v.*

*Innarelli*, 524 F.3d 286, 293 (1st Cir. 2008). Additionally, "[f]ederal courts possess no inherent authority to order restitution, and may do so only as explicitly empowered by statute." *United States v. Hensley*, 91 F.3d 274, 276 (1st Cir. 1996).

The probation office in this case "is not aware of any actual, current loss to Kennebec Savings Bank." ECF at #104, ¶15. Further, the Government has not alleged that the victim bank suffered any actual loss. *Id.* at #118. Accordingly, an order requiring Mr. Deng to make payments beyond those required by the mortgage note would not compensate for a proven loss but would instead alter Mr. Deng's contractual agreement with Bangor Savings Bank. Such an order is not within the court's statutory restitution authority.

## ***II. Conclusion***

In light of the government's concession that no loss enhancement should apply under USSG §2B1.1(b)(1), the defense believes the current guidelines calculation should be a base offense level of 7, minus 2 levels for acceptance and minus 2 levels for his status as a "zero point offender" (USSG §§4C1.1(a)(1)-(11), 4C1.1(a) & (b)). If another 2 levels is subtracted as a "minor role" adjustment (USSG §3B1.2(b)) then his total offense level would be 1[2] which, at Criminal

[2] Mr. Deng's original sentencing memorandum erroneously calculated that his total offense level would be "0". That was an error, however, in the event that the Court were to afford him a 4 level role adjustment pursuant to §3B1.2(a) then his total offense level would, in fact, be zero.

History Category I produces an advisory guidelines sentencing range of 0 - 6 months.

Respectfully submitted,

Dated: August 3, 2026

/s/ James S. Nixon

James S. Nixon, Esquire
Federal Defender
Office of the Federal Defender
23 Water Street, Suite 206
Bangor, Maine 04401
Attorney for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No.: 24-CR-140-JAW |
| | : | |
| v. | : | |
| | : | |
| YONGLIANG DENG, a/k/a | : | |
| DAVID DENG | : | |

## CERTIFICATE OF SERVICE

I, James S. Nixon, Esquire, Federal Defender, Office of the Federal Defender, attorney for the Defendant, hereby certify that on August 3, 2026, I electronically filed Defendant's Reply Memorandum in Aid of Sentencing with the Court via CM/ECF electronic filing system which will send notification of such filing via said system electronically on the 3rd day of August, 2026 to the following persons:

Alisa Ross, Assistant U.S. Attorney
U.S. DEPARTMENT OF JUSTICE
202 Harlow Street, Rm 111
Bangor, Maine 04401
Alisa.Ross@usdoj.gov

Dated: August 3, 2026

/s/ James S. Nixon
James S. Nixon, Esquire
Federal Defender
Office of the Federal Defender
23 Water Street, Suite 206
Bangor, Maine 04401
Attorney for Defendant